United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISIONEER, INC., | No. C 08-03967 MHP |
|     Plaintiff and Counterclaim Defendant, | **MEMORANDUM & ORDER** |
| v. | **Re: Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to Amend** |
| KEYSCAN, INC., | |
|     Defendant and Counterclaim Plaintiff. | |

      Plaintiff Visioneer, Inc. ("Visioneer") brought this action against defendant KeyScan, Inc. ("KeyScan") alleging infringement of U.S. Patent No. 5,499,108 ("the '108 patent") in violation of 35 U.S.C. sections 271 and 284.[1]  Now before the court is KeyScan's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Visioneer's motion for leave to amend the complaint.  Having fully considered the parties' arguments, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.    Patent Infringement

      Visioneer is a California company that develops scanning technologies to capture documents and photographs and integrate them with computer imaging applications.  Docket No. 1, Complaint ("Compl.") ¶¶ 1 & 4.  Visioneer asserts it is "the lawful owner" as assignee of the '108 patent, entitled "Document-driven scanning input device communicating with a computer."  Id. ¶¶ 1 & 17.

1    On August 19, 2008, Visioneer brought this patent infringement action against KeyScan, a New Jersey corporation, alleging that two KeyScan devices infringe the scanning technology covered by the '108 patent. Id. ¶¶ 2 & 5. Specifically, Visioneer contends that the '108 patent covers a scanning device activated by the placement of a document into the device, or in other words, a scanning system which is "document driven" or "auto-launched." Id. ¶ 16.

Visioneer alleges that in 2007, KeyScan began manufacturing, offering for sale and selling the "KS 810 Keyboard Scanner" and the "KS 811 Keyboard Scanner," two products that use KeyScan's allegedly directly infringing "No Touch™ Auto-Scan" system. Id ¶¶ 18, 20, 24. KeyScan's "No Touch™ Auto-Scan" system allegedly functions as follows. A user places a document into the feeder section of a scanning device, which then detects the presence of the document through laser technologies and draws the document through the scanner device. Id. ¶ 21. Concurrent with this process, the KS program, which opens automatically upon detection of a document in the scanning device, displays a representative image of the now-scanned document via an attached computer screen. Id. ¶ 22. After the document is scanned, the KS program offers a variety of options for the now-scanned document via a drop-down menu, including emailing, saving, printing and faxing. Id. ¶ 23.

Visioneer sent a letter notifying KeyScan of the existence of the '108 patent and its allegations of infringement in 2007. Id. ¶ 19. KeyScan continues to use the device and program. Id. ¶ 28-29.

II.    Patent Ownership and Licensing

KeyScan argues that Visioneer is, contrary to its assertion, not the sole owner as assignee of the '108 patent, and therefore lacks standing to bring this suit. Visioneer agrees that it is not the sole owner or assignee of the patent, but instead asserts that it is the exclusive licensee. Docket No. 47, Heit Dec., Exh. A, para. 3. A brief history of the '108 patent and its licensing is therefore necessary.

The '108 patent issued on March 12, 1996, from U.S. Patent Application No. 07/988,404, filed on December 9, 1992, as a continuation-in-part of U.S. Patent Application No. 07/922,169, which was filed on July 29, 1992. See '108 patent at 1. Visioneer is the listed assignee on the face

2

of the '108 patent. Id. On January 8th, 1999, Visioneer assigned the '108 patent to Primax Electronics, Ltd. ("Primax"). See Heit Dec. Exh. B. On July 25, 2001, Primax and Soque Holdings Ltd. ("Soque") entered into an agreement by which Soque would own the '108 patent, but that Primax would retain a "non-exclusive, world-wide, perpetual . . . [and] fully paid-up" license to make, use and sell the '108 patented product. See Heit Dec., Exh. D ¶ 5. On August 10, 2004, Primax recorded its assignment of the '108 patent to Soque in the United States Patent and Trademark Office. See Heit Dec., Exh. C.

Visioneer is a wholly-owned subsidiary of Soque. Docket No. 55, Elder Dec. ¶ 2. In 2002 and 2003, Soque granted Visioneer two consecutive year-long, non-exclusive world-wide licenses to practice and utilize the '108 patent. See Heit Dec., Exhs. E & F. In 2004, Soque granted Visioneer a six-year, non-exclusive, non-transferable, non-royalty bearing license to practice and utilize the '108 patent. See Heit. Dec., Exh. G. Soque orally granted Visioneer an exclusive license to the '108 patent, including the right to sue KeyScan and the ability to collect past damages. Elder Dec. ¶ 7.

LEGAL STANDARD

I.   Subject Matter Jurisdiction

A party may raise a challenge to the court's exercise of jurisdiction over the subject matter of an action under Federal Rule of Civil Procedure 12(b)(1). Dismissal is appropriate under Rule 12(b)(1) when the plaintiff has failed to establish federal jurisdiction over the claim. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). In ruling on a challenge to subject matter jurisdiction, a determination of jurisdiction by the standard of a Rule 12(b)(1) motion is appropriate when the jurisdictional issue is separable from the merits of the case, i.e., where jurisdiction and substantive facts are not intertwined. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger

3

1 disputes the truth of the allegations that, by themselves, would otherwise involve federal jurisdiction." Id. "In such circumstances, a court may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of the truthfulness of the Plaintiff's allegations." Id.; see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

II.     Standing

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, . . . [and therefore is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White, 227 F.3d at 1242. "A plaintiff has the burden of establishing the elements required for standing." Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005). "Standing is determined as of the date of the filing of the complaint." Id.

DISCUSSION

KeyScan asserts that Visioneer lacks standing to bring this action, because it is neither the owner, assignee nor exclusive licensee of the '108 patent. While Visioneer admits its error in asserting it is the owner of the '108 patent, it contends that it retains Article III constitutional standing as the exclusive licensee by means of the oral agreement and, for prudential concerns, seeks to join Soque in the amended complaint.

Under Article III of the United States Constitution, federal courts cannot entertain a litigant's claims unless that party demonstrates concrete injury, by satisfying its burden to demonstrate both constitutional and prudential standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, (1992). To meet constitutional requirements, a plaintiff must show that (1) he has suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent;" (2) the injury is fairly traceable to the challenged actions of the defendant; and, (3) "it [is] 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." Id. at 560-61 (internal quotations and citations omitted).

4

Prudential requirements for standing include (1) whether plaintiff's alleged injury falls within the "zone of interests" protected by the statute or constitutional provision at issue, (2) whether the complaint amounts to generalized grievances that are more appropriately resolved by the legislative and executive branches, and (3) whether the plaintiff is asserting his or her own legal rights and interests, rather than those of third parties.  See Smelt v. County of Orange, 447 F.3d 673, 682-83 (9th Cir. 2006); Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982).

A patentee is entitled to bring a "civil action for infringement of his patent."  35 U.S.C. § 281.  The term "patentee" includes the patentee to whom the patent was issued and the "successors in title to the patentee."  35 U.S.C. § 100(d).  A "successor in title" is any party holding legal title to the patent, such as an assignee, or an exclusive licensee holding all substantial rights to the patent. See Enzo Apa & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998); Prima Tek II L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000).

Because a right to sue for patent infringement expressly arises from statute, "the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." Warth, 422 U.S. at 500; see also Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund, 500 U.S. 72, 76 (1991).  The pertinent legal right in patent cases is the "right to exclude others from making, using, selling or offering to sell the patent invention in the United States . . . ."  Morrow v. Microsoft, Inc., 499 F.3d 1332, 1339 (Fed. Cir. 2007).  Therefore, "the constitutional injury in fact occurs when a party performs a least one prohibited action . . . that violates these exclusionary rights."  Id.  Only the party holding the exclusionary rights has sufficient injury in fact to meet the constitutional requirements for standing.  Id.

Licensees fall into one of three categories, based upon the degree of exclusionary control they possess: "those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." Morrow, 499 F.3d at 1339.  In the first category, i.e., those that can sue in their name alone, are

5

plaintiffs who hold all legal rights to the patent, including assignees and exclusive licensees who have been granted "all substantial rights to the patent." Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 288 Fed. Appx. 697, 705 (Fed. Cir. 2008), citing Morrow, 499 F.3d at 1340. An exclusive license must be in writing to allow the licensee to sue in its own name. Enzo APA, 134 F.3d at 1093. In the second category are exclusive licensees who do not receive all substantial rights and who must join the patent owner or assignee to avoid the prudential concern that the accused infringer will be subject to suit by the patent owner or assignee. Aspex, 288 Fed. Appx. at 705. Exclusive licensees who received their rights via an oral license fall into this category as well. Id., citing Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1364 (Fed. Cir. 2003) (holding that an exclusive license need not be in writing for the licensee to have standing if the patentee or assignee is also joined as co-plaintiff). In the third category are non-exclusive licensees—"those who are authorized to make, use or sell the patented product but who have no right to prevent others from also doing so." Aspex, 288 Fed. Appx. at 705, citing Morrow, 499 F.3d at 1341. Non-exclusive licensees do not have standing to be a party in a patent infringement action, even when joined with the assignee or owner. Id.

Visioneer asserts that it is in the second category, by dint of it receiving an oral exclusive license from its parent company Soque that included the right to sue KeyScan for infringement.[2] KeyScan alleges that Visioneer is in the third category, arguing that (a) such an oral agreement would violate the Statute of Frauds, rendering it unenforceable; and (b) regardless of the content of the oral license, a non-exclusive license with Primax remains and thus precludes the "exclusive licensee with less than all substantial rights" status necessary to maintain standing under the second category. The veracity of either of these arguments would mean that Visioneer is a non-exclusive licensee who lacks the necessary injury in fact to support initial Article III standing.

    A.    Oral License

In 2004, Soque granted Visioneer a six-year, written, non-exclusive license to practice the '108 patent. At some unidentified point thereafter, Visioneer alleges that Soque orally agreed to grant Visioneer an exclusive license. Any oral amendment of exclusivity that supercedes a written license to be performed over a period of one year would implicate the California Statute of Frauds

6

and therefore be void. Cal. Civ. Code. § 1624; Quiedan Co. v. Cent. Valley Builders Supply Co., 1993 WL 451503, at *1 (N.D. Cal. Oct. 28, 1993) (Caulfield, J.) aff'd 31 F.3d 1178 (Fed. Cir. 1994). Considering the non-exclusive license term ends in 2010, and assuming that the exclusivity amendment was made in 2008, the license would last for over one year. Accordingly, the oral exclusive license runs afoul of the Statute of Frauds.

Furthermore, "[u]nder California law, a contract is void if it is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained." Id. (internal citations omitted). As the court stated at the hearing on this matter, one of the many problems with this alleged oral license is that Visioneer provides no particulars; such as when it occurred, what parties were bound, for how long, and for what consideration. There is little evidence that such an exclusive license existed prior to filing this suit. The Elder Declaration, on which Visioneer relies for its grant of exclusivity, simply states that "[w]hile Soque still retained ownership of the '108 patent, Soque orally granted Visioneer an exclusive license to the '108 patent and all substantial rights therein." Elder Dec. ¶ 7.

On oral argument, Visioneer attested that it received the exclusive oral license in exchange for bringing suit against KeyScan.[3] Yet, as Visioneer also stated, prior to bringing this suit, it thought it was the assignee of the '108 patent, having neglected to contact higher management and verify such ownership. It stretches the bounds of credibility too far to accept that Visioneer, thinking it had the necessary rights to the '108 patent, approached Soque prior to filing this action to acquire an exclusive license to the patent to which it already believed it had exclusive rights. This scenario is nonsensical. The court is not convinced that, prior to commencing this action, Soque orally amended its existing non-exclusive license with Visioneer into an exclusive license.

B.   Exclusive License

The court need not decide this matter on these grounds, however. Irrespective of Visioneer's declaration filed one business-day prior to the hearing on this matter (and in response to the later-calendared Motion to Amend), Visioneer is apparently not the sole licensee of the '108 patent. Although the filed declaration states: "[P]rimax Electronics does not have a current license to any

7

intellectual property owned by Visioneer or Soque Holdings (Bermuda) Ltd.", the exhibits submitted with the declaration indicate otherwise. See Docket No. 60, Hwang Dec. ¶ 8.

The Hwang Declaration provides four different agreements between Primax and Soque. All agreements provide for either perpetual use, use for the valid term of the patents or for five years plus automatic yearly renewal. The Company Stock Purchase Agreement, dated June 28, 2001, states that "Primax shall retain a royalty-free, *perpetual*, transferable license to use the patents on the Visioneer IP list." Hwang Dec., Exh. A ¶ 8 (emphasis added). The Assignment of Intellectual Property, dated July 25, 2001, grants Primax a "non-exclusive, world-wide, *perpetual*, transferable, assignable, sublicenseable, fully paid-up license." Hwang Dec., Exh. D ¶ 5 (emphasis added). The License Agreement, dated July 25, 2001, states that Primax shall have a "non-exclusive, non-transferable license for the Term" with the term defined as "commenc[ing] on the Effective date and continuing until the latest expiration, invalidation or unenforceability of any of the Licensed Intellectual Property."[4] Hwang Dec., Exh. B ¶¶ 2.1 & 8.1. Of notable interest is that this agreement is characterized in the Hwang Declaration as granting a term of one year. Hwang Dec. ¶ 7. The Product Purchase Agreement, dated July 25, 2001, also characterized in the Hwang Declaration as authorizing sales for one year, id. ¶ 7, grants Primax a "fully paid-up, royalty-free, non-exclusive, worldwide license" for five years with automatic renewal in one year increments. Id., Exh. C, ¶¶ 5.2 & 12.1. Both exhibits B and C provide for earlier termination in writing. Hwang Dec., Exh. B ¶ 9.3; Exh. C ¶ 12.1. Because no such written termination has been submitted, the court must assume these agreements are still in full force.

Therefore, regardless of Visioneer's assertions of an "oral exclusive license," the existence of a perpetual, non-exclusive, world-wide license to Primax means that Visioneer is a non-exclusive licensee. Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1368 (Fed. Cir. 2008) ("[I]f the patentee allows others to practice the patent in the licensee's territory, then the licensee is not an exclusive licensee."). A non-exclusive licensee does not have the exclusive right to exclude, and therefore lacks the necessary injury in fact to support Article III standing. Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a

8

nonexclusive licensee suffers no legal injury from infringement." (internal citations omitted)). Because Visioneer is a non-exclusive licensee, it lacks the necessary standing to be a party to this action at all.

"[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing . . . ." Schreiber Foods, Inc., v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed. Cir. 2005). Under this clear law, Visioneer cannot remedy its initial lack of standing by joining Soque. Notably, Visioneer's reliance on Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 1019 (Fed. Cir. 2001) to argue for leave to amend to add a party is entirely misplaced, as the holding is applicable only at the appellate level. Even then, the Federal Circuit noted that "appellate-level amendments to correct jurisdictional defects" are appropriate only under rare circumstances and generally involve dismissing, rather than adding, a party. Id., citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 836 (1989) (holding that the courts of appeals have the authority to dismiss a dispensable non-diverse party).

Moreover, contrary to Visioneer's allegations, Federal Rule of Civil Procedure 19, which governs joinder, is not meant to correct jurisdictional defects in standing or otherwise circumvent the statutory requirement for a patent infringement suit to be brought by the "patentee." See Prima Tek, 222 F.3d at 1381 (reversing and vacating where the district court erred in not dismissing the suit brought by a licensee with less than all substantial rights for lack of standing to sue in its own name).

The court rejects Visioneer's argument that Soque's willingness to join the action resolves the issue by conferring standing in this case because, contrary to Visioneer's oral arguments, remedying any prudential defects does not remedy the underlying Article III defect. KeyScan's motion to dismiss is hereby **GRANTED** and Visioneer's motion to amend to add Soque as a party is hereby **DENIED**.

CONCLUSION

Defendant's motion to dismiss is **GRANTED** without prejudice. Visioneer's motion to amend is **DENIED**.

IT IS SO ORDERED.

Dated: May 4, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Although Visioneer's complaint states that the it is alleging patent infringement under 15 U.S.C. § 1114, the court presumes this is a typographical error.

2. The fact that Visioneer is a wholly-owned subsidiary of the assignee does not confer standing. See generally Mars Inc., v. Coin Acceptors, Inc., 527 F.3d 1359 (Fed. Cir. 2008) (discussing that presence of non-exclusive licenses from assignee to two wholly-owned subsidiaries negated the exclusive license necessary for the wholly-owned subsidiary to maintain infringement action in own name).

3. This statement alone suggests more questions than answers. For example, if Visioneer's consideration was filing an action against KeyScan, does that mean that Visioneer did not have an exclusive license *until* it filed action against KeyScan? This hardly resolves the inquiry of whether Visioneer had standing as of the time it filed the suit.

4. The court notes the conflict between the various licenses, some granting transferable rights and some granting non-transferable rights to the same intellectual property. These discrepancies do not affect the outcome with regard to the fact that other non-exclusive license agreements for the '108 patent actually existed.